**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| AMERICAN PLANT FOOD CORP.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; UNITED STATES CUSTOMS AND BORDER PROTECTION; HOWARD LUTNICK, *in his official capacity as Secretary of Commerce*; RODNEY S. SCOTT, *in his official capacity as Commissioner of United States Customs and Border Protection*; JAMIESON GREER, *in his official capacity as the United States Trade Representative*; and OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE,<br><br>Defendants. | Case No. 26-04954<br><br>**COMPLAINT** |

Plaintiff American Plant Food Corp. ("Plaintiff"), by and through its undersigned counsel, brings this civil action against Defendants and alleges as follows:

## INTRODUCTION

1. Plaintiff commences this action to obtain relief in the form of a refund of import duties imposed pursuant to certain Executive Orders issued under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, and paid by Plaintiff, and an injunction against any further collection of said tariffs, should those tariffs be determined to be unauthorized.

2. On February 20, 2026, the United States Supreme Court held that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, 146 S. Ct. 628 (2026).

3. That same day, the president signed an executive order ending the IEEPA tariff actions under Executive Order 14193, as amended; Executive Order 14194, as amended; Executive

Order 14195, as amended; Executive Order 14245; Executive Order 14257, as amended; Executive Order 14323, as amended; Executive Order 14329, as amended; Executive Order 14380; and Executive Order 14382.

4. Accordingly, now that the IEEPA tariffs have been held to be illegal and are no longer in effect, Plaintiff brings this action to ensure that it can obtain a judgment ordering the refund of duties that Plaintiff paid and further ordering that these tariffs not be collected on any future Plaintiff imports.

**JURISDICTION**

5. In *V.O.S. Selections*, the Court of Appeals for the Federal Circuit found that this Court has subject matter jurisdiction under 28 U.S.C. § 1581 for this action because it is commenced against an officer of the United States and arises out of an Executive Order providing for tariffs. 149 F.4th at 1328–30. *See also Learning Resources, Inc.*, 146 S. Ct. at 646 (remanding to the Federal Circuit and vacating a judgment in a parallel case by the United States District Court for the District of Columbia for lack of jurisdiction.).

6. The Court possesses all the powers in law and equity of, or as conferred by statute upon, a district court of the United States. 28 U.S.C. § 1585. The Court may enter a money judgment for or against the United States in any civil action commenced under 28 U.S.C. § 1581 or 28 U.S.C. § 1582 and may also order any other form of relief that is appropriate in a civil action. 28 U.S.C. §§ 2643(a)(1), (c)(1).

**PARTIES**

7. Plaintiff is an importer of record of merchandise subject to tariffs imposed pursuant to IEEPA challenged herein.

8. Defendant the United States of America is the federal government of the United States of America.

9. Defendant United States Customs and Border Protection is responsible for administering and collecting tariffs directed by the tariffs challenged herein.

10. Defendant Howard Lutnick, in his official capacity, is the Secretary of Commerce. He is responsible for implementing the tariffs challenged herein.

11. Defendant Rodney S. Scott, in his official capacity, is the Commissioner of United States Customs and Border Protection. He is responsible for administering and collecting the tariffs challenged herein.

12. Defendant Jamieson Greer, in his official capacity, is the United States Trade Representative. He is responsible for implementing the tariffs challenged herein.

13. Defendant the Office of the United States Trade Representative ("USTR") is responsible for implementing the tariff policy challenged herein.

## **STANDING**

14. To establish Article III standing, a plaintiff must show injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992). Plaintiff is harmed by the Executive Orders challenged herein because Plaintiff has imported and continues to import goods subject to tariffs imposed by those Executive Orders and, therefore, has paid and would be required to continue paying these tariffs to the U.S. government. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."); *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007) ("being forced to pay" money to the government "causes a real and immediate economic injury"). An order from this Court requiring refund of all

duties paid regardless of liquidation status will redress these injuries by reversing the costs incurred by Plaintiff's business. Declaratory and injunctive relief will further redress these injuries because Plaintiff will no longer be required to pay the tariffs on future imports.

## BACKGROUND & FACTUAL ALLEGATIONS

### A. IEEPA Orders

15. On February 1, 2025, President Trump issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs, and for each set of tariffs President Trump claimed that they were justified under IEEPA because of a purported national emergency. Collectively, these are referred to in this complaint as the "Trafficking Tariff Orders."

16. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9117, *Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Tariff Order"), imposed an additional 25% tariff on the import of goods from Mexico. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.* at 9118.

17. The executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9113, *Imposing Duties to Address the* Flow *of Illicit Drugs Across Our Northern Border* ("Canada Tariff Order"), declared an emergency because of opioid trafficking and also imposed a 25% tariff, with certain exceptions.

18. Finally, the executive order directed at China, Executive Order 14195, 90 Fed. Reg. 9121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of*

*China* ("China Tariff Order"), also declared an emergency because of opioid trafficking, declaring that the "the sustained influx of synthetic opioids" was a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and drugs into the United States" and "the failure of the [People's Republic of China] government to arrest, seize, detain, or otherwise intercept chemical precursor suppliers, money launderers, other [transnational criminal organizations], criminals at large, and drugs." *Id.*

19. The China Tariff Order imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

20. Four days later, on February 5, 2025, the President issued another order, Executive Order 14200, 90 Fed. Reg. 9277, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*. ("February 5 Amendment").

21. The next month, on March 3, 2025, the President amended the China Tariff Order again through Executive Order 14228, 90 Fed. Reg. 11463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20% and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."

22. On April 2, 2025, the President issued an Executive Order imposing tariffs on goods originating in virtually all countries through Executive Order No. 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 2, 2025), as amended ("Reciprocal

Tariff Order"). The express stated goal of these tariffs is "to rebalance global trade flows." *Id.* at 15045.

23. The Reciprocal Tariff Order declares that the "large and persistent annual U.S. goods trade deficits" are a "national emergency" because they "constitute an unusual and extraordinary threat to the national security and economy of the United States." *Id.* at 15041.

24. The Reciprocal Tariff Order finds that these trade deficits have "led to the hollowing out of our manufacturing base; inhibited our ability to scale advanced domestic manufacturing capacity; undermined critical supply chains; and rendered our defense-industrial base dependent on foreign adversaries." *Id.*

25. Based on this newly declared national emergency, the Reciprocal Tariff Order specifically imposes "an additional *ad valorem* duty" of 10 percent "on all imports from all trading partners" except for countries and products as expressly excluded. *Id.* at 15045. The Reciprocal Tariff Order also imposes a country-specific tariff rate on 57 trading partners. *Id.* at 15045, 15049-50. The Reciprocal Tariff Order modifies the Harmonized Tariff Schedule of the United States ("HTSUS") accordingly. *Id.* at 15047.

26. The 10 percent universal tariffs took effect on April 5, 2025. *Id.* at 15045, 15047.

27. These country-specific tariff rates were set to take effect on April 9, 2025. *Id.* at 15045.

28. On April 9, 2025, the President issued Executive Order No. 14266 suspending imposition of the country-specific rates until July 9, 2025. Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625, 15626 (Apr. 9, 2025). That order did not suspend the 10 percent universal tariffs, meaning that the

10 percent rate would apply during that period to goods originating in all the trading partners covered by the Reciprocal Tariffs. *Id.*

29. On April 11, 2025, the President clarified that a variety of technological products related to computers, data processing, telecommunications, and electronic components were exempted from the Reciprocal Tariffs. *See* Presidential Memorandum, *Clarification of Exceptions Under Executive Order 14257 of April 2, 2025, as amended* (Apr. 11, 2025).

30. On July 7, 2025, the President issued Executive Order No. 14316 extending the suspension of the country-specific rates until August 1, 2025. Exec. Order No. 14316, *Extending the Modification of the Reciprocal Tariff Rates*, 90 Fed. Reg. 30823 (July 7, 2025).

31. On July 31, 2025, the President issued Executive Order No. 14326, which adjusted the country-specific rates and further extended their application until seven days after the order. Exec. Order No. 14326, *Further Modifying the Reciprocal Tariff Rates*, 90 Fed. Reg. 37963, 37963–64 (July 31, 2025).

32. The Executive Orders discussed above are referred to collectively herein as the "Challenged Orders." The only asserted authority for imposing tariffs under the Challenged Orders is IEEPA. No other President has ever imposed tariffs under IEEPA. *See Learning Resources, Inc.*, 146 S. Ct. at 640; *Learning Res.*, 784 F. Supp. 3d at 219.

**B. Plaintiff's Importation Under the Challenged Orders**

33. Plaintiff has imported goods subject to tariffs imposed under the Challenged Orders.

34. These tariffs have caused Plaintiff's business to suffer direct, cognizable financial harm as it has faced additional costs and will continue to do so unless and until the Challenged Orders are vacated.

## C. Supreme Court Decision Holding the Challenged Orders Unlawful

35. On February 20, 2026, the United States Supreme Court held that IEEPA does not authorize the President to impose tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

36. The Court explained that the President had asserted "the extraordinary power to unilaterally impose tariffs of unlimited amount, duration, and scope," and held that such authority requires "clear congressional authorization." The Court concluded that IEEPA's grant of authority to "regulate . . . importation" does not encompass the power to impose tariffs.

37. The Court emphasized that IEEPA "contains no reference to tariffs or duties," that Congress has elsewhere delegated tariff authority "clearly and with careful constraints," and that "no President has read IEEPA to confer such power" until the challenged actions at issue.

38. Accordingly, the Supreme Court affirmed the judgment of the Court of Appeals for the Federal Circuit holding the IEEPA tariffs unlawful and held that "IEEPA does not authorize the President to impose tariffs." The Challenged Orders are therefore contrary to law and invalid.

## CLAIMS FOR RELIEF

## COUNT I

### *ULTRA VIRES* ACTS IN VIOLATION OF THE INTERNATIONAL EMERGENCY ECONOMIC POWERS ACT, 50 U.S.C. § 1702

39. Plaintiff realleges and incorporates herein by reference the foregoing Paragraphs of the Complaint as if fully set forth herein.

40. The Court has the ability to enjoin unconstitutional acts by state and federal officers. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Accordingly, "[w]hen an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) (citation omitted).

41. The Challenged Orders are *ultra vires* because, even in the face of an actual national emergency, IEEPA does not authorize the President to impose tariffs.

42. For these reasons (and other reasons that the Supreme Court held that the Challenged Orders are unconstitutional), the Challenged Orders are *ultra vires* because it exceeds the President's authority under IEEPA, and that the corresponding modifications to the HTSUS are unlawful.

43. Because the Challenged Orders are *ultra vires*, and the corresponding modifications to the HTSUS are unlawful, it cannot be enforced by Defendants against Plaintiff. This Court should accordingly enjoin Defendants, in their official capacities, from enforcing the Challenged Orders (including any future amendments thereto) against Plaintiff.

44. If the Challenged Orders are not declared *ultra vires* and the HTSUS modifications are not declared unlawful, Plaintiff will continue to suffer substantial injury, including irreparable harm.

45. Plaintiff is also entitled to an order directing Defendants to refund the tariffs paid including interest as a result of their imposition by the unlawful Challenged Orders, on all relevant entries whether liquidated or unliquidated.

**COUNT II**

**REFUND OF DUTY OVERPAYMENTS**

46. Plaintiff realleges and incorporates herein by reference the foregoing Paragraphs of the Complaint as if fully set forth herein.

47. Plaintiff entered merchandise subject to IEEPA tariffs during the period in which duties were assessed pursuant to the Challenged Orders.

48. On February 20, 2026, the Supreme Court of the United States held in *Learning Resources* that the IEEPA, 50 U.S.C. § 1702, does not authorize the President to impose tariffs.

49. In *Atmus Filtration, Inc. v. United States*, No. 1:26-cv-01259-RKE, ECF No. 21 (Ct. Int'l Trade Mar. 3, 2026) the Court of International Trade pronounced that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision."

50. Because IEEPA does not authorize the imposition of tariffs, the Challenged Orders were issued without statutory authority and are contrary to law.

51. The duties assessed and collected on Plaintiff's entries pursuant to the Challenged Orders were therefore not "required by law to be so deposited or paid."

52. Plaintiff paid duties on the subject entries in excess of what was lawfully owed.

53. 19 U.S.C. § 1520(a)(1) authorizes the refund of duties whenever it is ascertained upon liquidation or reliquidation that more money has been deposited or paid as duties than was required by law.

54. CBP's regulations likewise require the refund of excessive duties and interest paid upon an entry. *See* 19 C.F.R. § 24.36.

55. Because the collection of the IEEPA duties was contrary to law, Plaintiff is entitled to a refund of the duties unlawfully assessed and paid, together with interest as provided by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court enter an order and judgment:

a. ordering CBP to reliquidate any entries that have been liquidated with IEEPA duties;

b. ordering CBP to liquidate all unliquidated entries subject to IEEPA duties without IEEPA duties;

c. awarding Plaintiff, and ordering Defendants to promptly provide, a refund of the amount of any tariffs collected by Defendants pursuant to the Challenged Orders, including pre- and post-judgment interest, on all relevant entries whether liquidated or unliquidated;

d. awarding Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action

e. granting any such other relief as this Court may deem just or proper.

Dated: November 3, 2026

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**
Attorneys for Plaintiff

Wm. Randolph Rucker
320 S. Canal Street, Suite 3300
Chicago, IL 60606
(312) 569-1157

Daniel R. Wilson
1500 K Street NW, Suite 1100
Washington, DC 20005
(202) 230-5211

By: *_/s/ Wm. Randolph Rucker_*

## CERTIFICATE OF SERVICE

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on November 3, 2026, I caused a copy of the Summons, Complaint, Form 5, Form 11, and Form 13 to be served by certified mail, return receipt requested, upon the following:

Attorney-In-Charge
U.S. Department of Justice
Commercial Litigation Branch
Civil Division
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Attorney-In-Charge
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

Howard Lutnick
U.S. Department of Commerce
1401 Constitution Avenue, NW
Washington, DC 20230

Rodney Scott
U.S. Customs and Border Protection
1300 Pennsylvania Avenue, NW
Washington, DC 20229

Jamieson Greer
Office of the United States Trade Representative
600 17th Street, NW
Washington, DC 20508

Attorney-In-Charge
Office of General Counsel
Office of the United States Trade Representative
600 17th Street NW
Washington, DC 20508

*/s/ Wm. Randolph Rucker*